UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CERTAIN INTERESTED UNDERWRITERS
AT LLOYD'S LONDON SUBSCRIBING
TO CERTIFICATE OF INSURANCE NO.
9214,

        Plaintiff,

v.                    CASE NO. 8:09-CV-1081-T-17TGW

MICHAEL AND EDITH HALIKOYTAKIS
d/b/a HALI PLAZA, CAMILLA
BERNHARDT and BRIAN BERNHARDT,
POINT BUILDERS, INC., a Florida
corporation,

        Defendants.

_____/

ORDER

    This cause is before the Court on:

Dkt. 36  Motion for Summary Judgment
Dkt. 39  Memorandum in Opposition - Halikoytakis
Dkt. 42  Reply

    In the Complaint (Dkt. 1), Plaintiff Certain Underwriters at
Lloyd's London Subscribing to Certificate No. 9214 ("Lloyd's")
seeks a declaratory judgment that Plaintiff has no duty to defend
or indemnify Defendants Michael and Edith Halikoytakis d/b/a Hali
Plaza in connection with Case No. 08-CA-027260, Camilla Bernhardt
and Brian Bernhardt v. Michael and Edith Halikoytakis d/b/a Hali
Plaza, and Point Builders, Inc., which is pending in Hillsborough
County Circuit Court ("underlying lawsuit").   Defendant Michael
and Edith Halikoytakis d/b/a Hali Plaza are defendants in the
underlying lawsuit, and filed a cross-claim against Point

Case No. 8:09-CV-1081-T-17TGW

Builders, Inc.

I.  Standard of Review

A.  Summary Judgment Standard

    Summary judgment should be rendered if the pleadings, the
discovery and disclosure materials on file, and any affidavits,
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law.
Fed.R.Civ.P. 56(c).

> "The plain language of Rule 56(c) mandates
> the entry of summary judgment after adequate
> time for discovery and upon motion, against a
> party who fails to make a showing sufficient
> to establish the existence of an element
> essential to that party's case, and on which
> that party will bear the burden of proof at
> trial."

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

    The appropriate substantive law will guide the determination
of which facts are material and which facts are...irrelevant.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All
reasonable doubts about the facts and all justifiable inferences
are resolved in favor of the non-movant.  See Fitzpatrick v. City
of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is
genuine "if the evidence is such that a reasonable jury could
return a verdict for the non-moving party."  See Anderson, 477
U.S. at 248.  But, "[i]f the evidence is merely colorable...or is
not significantly probative...summary judgment may be granted."
Id. at 249-50.

2

Case No. 8:09-CV-1081-T-17TGW

B.   Duty to Defend and Indemnify Standard

     Under Florida law, an insurer must defend its insured when
the initial pleadings fairly bring the case within the scope of
coverage.  See Pioneer Nat'l Title Ins. Co. v. Fourth Commerce
Props. Corp., 487 So.2d 1051, 1054 (Fla. 1986).  Despite the
wording in the initial pleadings, an insurer "is not required to
defend if it would not be bound to indemnify the insured even
though the plaintiff should prevail in his action."  Nat'l Union
Fire Ins. Co. v. Lenox Liquors, Inc., 358 So.2d 533, 535 (Fla.
1977).  If uncontroverted evidence places the claim outside of
coverage, and the plaintiff makes no attempt to plead the facts
creating coverage or suggest the existence of evidence creating
coverage, an insurer is relieved of defending.  See Underwriters
at Lloyd's London v. STD Enters., Inc., 395 F.Supp.2d 1142, 1146
(M.D. Fla. 2005).  If an insurer does not have a duty to defend,
then it does not have a duty to indemnify.  Council v. Paradigm
Ins. Co., 133 F.Supp.2d 1339, 1340 (M.D. Fla. 2001).  The duty to
defend ceases when it is shown that there is no potential for
coverage, i.e. when there is no duty to indemnify.  STD Enterps.,
395 F.Supp.2d at 1146.  The insured bears the burden of proving
the claim falls within the Policy's affirmative grant of
coverage.  East Fla. Hauling, Inc. v. Lexington Ins. Co., 913
So.2d 673, 678 (Fla. 3d DCA 2005).

     In a declaratory judgment action, "if the allegations of the
complaint alleging a claim against the insured are acts not
covered by the policy, or are excluded from the policy's
coverage, the insurer is not obligated to defend or indemnify the
insured."  IDC Construc., LLC v. Admiral Ins. Co., 339 F.Supp.2d
1342, 1347 (S.D. Fla. 2004).

Case No. 8:09-CV-1081-T-17TGW

II.  Statement of Facts

1.  Defendants Michael Halykoytakis and Edith Halikoytakis
owned Hali Plaza, 1422-1440 Apollo Beach Boulevard, Apollo Beach,
Florida, 33572.  Hali Plaza is a commercial rental property
comprised of ten units, in which space is rented to small
businesses.  Defendant Michael Halykoytakis  operated the
business known as "Hali Plaza."

2.  Plaintiff Certain Interested Underwriters at Lloyd's,
London Subscribing to Certificate of Insurance No. 9214
("Underwriters") issued Certificate of Insurance No. 9214
("Policy") to Hali Plaza, effective April 1, 2008 through April
1, 2009.

3.  The policy includes a declarations page, supplemental
declarations, a schedule of forms and endorsements, and a
Certificate of Insurance.  The Commercial General Liability Form
includes in Section 1 - Coverages, Coverage A, Bodily Injury and
Property Damage Liability, Coverage B, Personal and Advertising
Injury Liability, Coverage C, Medical Payments, and Supplementary
Payments, Coverages A and B.  In Section II, the policy defines
"who is an insured."  Section III defines the limits of
insurance.  Section IV includes Commercial General Liability
Conditions.  Section V includes definitions.  The scheduled forms
and endorsements are attached to the policy.

4.  GSC-GL-001, Combination General Liability Endorsement
includes the following:

(A) **Classification Limitation**

4

Case No. 8:09-CV-1081-T-17TGW

> This insurance applies only to
> locations and operations that are
> described under "business
> description" and/or
> "classification" on the Declaration
> page or Extensions of Declarations
> page of this policy.  If any
> operations and/or location(s) are
> not so described, they are not
> covered hereunder.

. . . . . . .

> (E) **Independent Contractors Special Condition**

> If you hire contractors it is a
> condition of coverage that you use
> only those that are insured for
> Commercial General Liability
> coverage with limits at least equal
> to the limits of this policy.  You
> should be named as an Additional
> Insured on their policy and you
> should obtain copies of
> certificates of insurance
> confirming this.  Failure to comply
> will invalidate this insurance.

5.  GSC-GL-009, Lessors Risk Only Endorsement, provides:

> This policy is written on a Lessors
> Risk Only basis and as such it is
> written and priced on the basis
> that your tenant(s) carry liability
> insurance to protect you as well as
> them.  Within the lease agreement
> between yourself and the tenant(s)
> there must be a requirement that
> the tenant(s) carry Commercial
> General Liability insurance that
> provides;

> (a) limits greater than or equal to

5

Case No. 8:09-CV-1081-T-17TGW

> your limits, and
>
> (b) names you as an Additional
> Insured on their policy.
>
> Your tenant(s) must furnish you
> with a Certificate of Insurance
> clearly showing the above.  Parking
> Lot(s) or other land or premises
> owned by you and leased to
> tenant(s) must be included in such
> tenant(s) insurance.  Failure to
> comply with this condition voids
> coverage under your policy.

6.   Commercial General Liability Endorsement CG 21 44 07 98 provides:

> This insurance applies only to
> "bodily injury", "property damage",
> 'personal or advertising injury"
> and medical expenses arising out of
>
> 1.   The ownership, maintenance or
> use of the premises shown in the
> Schedule and operations necessary
> or incidental to those premises; or
>
> 2.   The project shown in the
> Schedule.

No entry appears in the Schedule for this endorsement.  The endorsement states: "If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement."

7.   In 2006, Defendant Halykoytakis contacted Defendant Point Builders, Inc. to investigate replacing a retention pond at Hali Plaza with more parking space.  (Dkt. 36-1, pp. 24-25).   The scope of the work included obtaining permits, and then providing an estimate to perform the work.

6

Case No. 8:09-CV-1081-T-17TGW

    8.  On March 14, 2008, Defendant Michael Halykoytakis signed
a contract with Point Builders, Inc. to perform the work, which
was to commence on May 8 or May 9, 2008, and which was expected
to be a two-week job.  (Dkt. 36-1, p. 25).  The work included the
removal of a retention pond, installation of a stormwater
drainage system, and installation of a new parking area.  (Dkt.
1-4).

    9.  During the construction project for Hali Plaza,
equipment used by Point Builders and its subcontractors was
stored off site on a vacant lot located across the street from
Hali Plaza.  (Kelley Deposition, Dkt. 36-3, pp. 29-30).

    10.  Defendant Michael Halykoytakis and Defendant Point
Builders, Inc. negotiated the terms of the contract.  (Dkt. 36-1,
p. 31).  In Answers to Interrogatories, Defendant Halykoytakis
states: "In approximately March 2008, a Point Builders'
representative named Sean Marler told me at my home that Point
Builders could place me as an additional insured on its policy.
I said this would be fine." (Dkt. 36-1, p. 116).

    11.  During the contract negotiations, Defendant Michael
Halykoytakis and Defendant Point Builders, Inc. discussed
insurance.  Defendant Halykoytakis testified:

> A.  "They say that they were going to cover
> me--the insurance, they were going to cover
> me, and they were going to provide me with a
> certificate.
>
> Q.  Did you ever-did you ever receive a
> certificate from them?

Case No. 8:09-CV-1081-T-17TGW

> A.  As a matter of fact, I did not receive a
> certificate at that particular time when I
> signed the contract or before they start the
> job.
>
> Q.  Did you follow up with Point Builders, to
> inquire about the certificate of insurance?
>
> A.  To be honest with you, I did not follow
> up; but then, when the need arise after the
> lawsuit, then I realize, according to the
> adjuster from Lloyd's of London, that I
> should have had the certificate.
>
> He said, "I advise you to get the certificate
> because they promised you the certificate."
> So I asked them and they gave me the
> certificate."

(Dkt. 36-1, pp. 31-32).


12.  Defendant Michael Halykoytakis testified that he
discussed the limits of liability of Point Builders, Inc.'s
insurance policy, which was $1,000,000.  Defendant Halykoytakis
further testified:

> A.  No.  Once we signed the contract and I
> gave them the check and he assure me that I
> be covered under the insurance and he show me
> also one clause on the back of the contract
> saying that portion of the money they charge
> me goes to cover me for the insurance, so I
> relaxed.

(Dkt. 36-1, p. 37).

13.  Michael F. Kelley, P.E., Point Builders, Inc.,
presented a "Proposal for Professional Construction Services" to
Defendant Halikoytakis, who accepted the proposal by signing the
Proposal on March 14, 2008. (Dkt. 1-4).  The Proposal states:

Case No. 8:09-CV-1081-T-17TGW

> "If this proposal is acceptable, please
> review the enclosed Rate Sheet and General
> Conditions for the proposed contract.  Your
> signature below and your initials on the
> General Conditions page constitute your
> acceptance of the terms and conditions of
> this contract.  A copy of the executed
> contract along with the retainer is required
> to begin work."

14.   On April 24, 2008, Mid-Continent Casualty Company
issued a commercial property policy, Policy No. 04-GL-000713353
to Point Builders, Inc., with effective dates of April 24, 2008
to April 24, 2009.

15.   Defendant Halykoytakis testified that he did not ask to
be included as an additional insured Point Builders, Inc.'s
insurance policy:

> Q.   At any point, did you ask Point Builders
> to include a term in this contract that Hali
> Plaza would be added as an additional insured
> under Point Builders' liability policy?
>
> A.   They offered this.  I didn't ask.
>
> Q.   What I'm asking you is, did you ever
> specifically ask them to include a term in
> this contract-
>
> A.   In the written contract, no, I didn't,
> because once I figure out what I initial in
> the general conditions, they are charging me
> so much money of the contract for the
> insurance coverage and I be a part of it,
> then I didn't have to ask for anything.

(Dkt. 36-1, pp. 38-39)

16.   In June, 2008, Defendant Camilla Bernhardt was injured

Case No. 8:09-CV-1081-T-17TGW

when she fell on the sidewalk across from Hali Plaza.  Defendants
Camilla Bernhardt and Brian Bernhardt filed suit against
Defendants Michael and Edith Halykoytakis d/b/a Hali Plaza in
Hillsborough County Circuit Court, Case No. 08-
CA-27260.  Defendants alleged that "Michael and Edith
Halykoytakis d/b/a Hali Plaza negligently caused and permitted
the sidewalk across from Hali Plaza to be damaged by trucks and
equipment used in construction on their property.  The Defendants
used the vacant lot across the street from their property as a
staging area for trucks and equipment.  These heavy duty
construction trucks and equipment seriously damaged the sidewalk
at the vacant lot (Parcel Number U-17-31-19-ZZZ-00001-747800).
Hali Plaza filed a cross-claim against Point Builders, Inc. in
that case.  Underwriters defended Hali Plaza in the underlying
lawsuit, subject to a reservation of rights.

    17.  On February 11, 2009, Defendant Halykoytakis requested
a Certificate of Insurance naming Hali Plaza as an additional
insured on the Point Builders, Inc. policy from Williams-Hess
Insurance.   The Certificate states: "This Certificate is issued
as a matter of information only and confers no rights upon the
Certificate Holder.  This Certificate does not amend, extend, or
alter the coverage afforded by the policies below."  (Dkt. 1-6).

    18.  The Certificate further states: "The named Certificate
Holder is included as an additional insured with respect to the
General Liability, where required by written contract."

III.  Plaintiff's Motion

    Plaintiff Underwriters moves for summary judgment in favor

Case No. 8:09-CV-1081-T-17TGW

of Underwriters, declaring that Plaintiff Underwriters has no
obligation to defend or indemnify Defendants Michael and Edith
Halykoytakis in the underlying lawsuit.  Plaintiff Underwriters
relies on: 1) the Independent Contractors Special Condition; 2)
the Classification Limitations; and 3) the Limitation of Coverage
to Designated Premises or Project Endorsement.

       Defendants Michael and Edith Halykoytakis oppose Plaintiff's
Motion for Summary Judgment.  Defendants argue that the language
of the policy does not limit coverage solely to bodily injuries
occurring directly on the Halikoytakis' premises, and the
provisions invoked by Plaintiff show that the Bernhardt loss is
covered even though it occurred outside Defendant Halikoytakis'
property.  Defendants further argue that the policy does not
state that Halikoytakis was required to be named on a
contractor's liability policy in order to have coverage; the
policy states that Halikoytakis <u>should</u> be named as an additional
insured on the contractor's liability policy, not that he <u>must</u> be
so named.

IV.  Discussion

1) General Principles

       The interpretation of an insurance policy is a question of
law for the Court.  <u>Fayad v. Clarendon Nat'l Ins. Co.</u>, 899 So.2d
1082, 2085 (Fla. 2005).  Insurance policies are to be construed
in accordance with their plain language.  <u>Id</u>, at 1086.   "[I]n
construing insurance policies, courts should read each policy as
a whole, endeavoring to give every provision its full meaning and
operative effect."  <u>Swire Pacific Holdings, Inc. v. Zurich Ins.</u>

11

Case No. 8:09-CV-1081-T-17TGW

Co., 845 So.2d 161, 166 (Fla. 2003).

Insurance coverage must be construed broadly and its exclusions narrowly.  Hudson v. Prudential Prop. & Cas. Ins. Co., 450 So.2d 565, 568 (Fla. 2d DCA 1984).  An insurance policy is ambiguous when its terms are subject to different reasonable interpretations, one of coverage and one of exclusion. Continental Ins. Co. v. Roberts, 410 F.3d 1331, 1333 (11th Cir. 2005).  If an insurance policy is ambiguous, the ambiguity must be resolved against the insurer, and when the terms used in an insurance policy are susceptible to two interpretations, the interpretation which provides coverage must be adopted.  Id.  The lack of a definition of an operative term in the policy does not necessarily render the term ambiguous and in need of interpretation by the courts.  State Farm Fire & Cas. Co. v CTC Dev. Corp., 720 So.2d 1072, 1076 (Fla. 1988).  Insurance contracts are interpreted according to the plain language of the policy except "when a genuine inconsistency, uncertainty or ambiguity in meaning remains after resort to the ordinary rules of construction."  State Farm Mutual Automobile Ins. Co. v. Pridgen, 498 So.2d 1245, 1248 (Fla. 1986).

Florida courts construe the term "arising out of" broadly to mean "originating from, having its origin in, growing out of, flowing from, incident to or having a connection with."  Taurus Holdings, Inc. v. United States Fidelity & Guaranty Co., 913 So.2d 528, 539 (Fla. 2005).  The Florida Supreme Court has found the phrase unambiguous, and instructed that it should be interpreted to "require some causal connection or relationship" but not proximate cause. Id., at 540.

Case No. 8:09-CV-1081-T-17TGW

2) Type of Policy

The Bernhardt Defendants named Defendant Halikoytakis as a
defendant in the related state court case on the theory that
Defendant Halikoytakis hired Point Builders, Inc. to perform
certain work, Point Builders, Inc. damaged the sidewalk across
the street from Hali Plaza with heavy equipment, which caused
Defendant Camilla Bernhardt to trip and fall while Defendant
Bernhardt was running, with the resulting injuries.

Plaintiff Underwriters contends that the Halikoytakis policy
is a landlord/tenant policy, and not a commercial general
liability insurance policy.  Plaintiff Underwriters therefore
seeks a judgment that the insurance policy at issue does not
cover the Bernhardt incident, and Plaintiff has no duty to defend
or indemnify.  Under this theory, Plaintiff effectively converted
the subject policy from a commercial general liability insurance
policy to a landlord/tenant policy through the "Lessor's Risk"
endorsement which became part of the subject policy

Defendant Halikoytakis argues that the policy is ambiguous,
and therefore the Court should find that there is coverage for
the Bernhardt incident.

A landlord or tenant may obtain liability insurance to
protect themselves from liability arising out of their ownership
or occupation of rental property.  The purpose of such insurance
is to protect against liability arising from the condition or use
of the building as a building.  Landlord/tenant insurance is
different from insurance against liability arising from the
nature of the activity conducted within the insured premises.
Liability arising out of a business enterprise is typically

13

Case No. 8:09-CV-1081-T-17TGW

covered by a commercial general liability policy.  A
landlord/tenant policy provides specific protection against
liability for defective conditions in or on the property itself,
as distinguished from liability arising from the use of movable
equipment or from the acceptance of property as a bailee.  See
Couch on Insurance (3d ed.), Sec. 132:59.  Commercial general
liability policies are designed to protect the insured from
losses arising out of business operations i.e. tort liability for
physical damage to others and not contractual liability for
economic losses because the product furnished by the business is
not what was bargained for.

     The Court notes that the Declarations Page indicates that
Defendant Halikoytakis paid an insurance premium of $700.00 for
"Commercial General Coverage Part."  (Dkt. 1-1, p. 1).
The Supplemental Declarations (Dkt. 1-1, p. 2) includes a
business description which states "Property Owner/LRO" (Lessors
Risk Only) and designates the address as 1442-1440 Apollo Beach
Blvd., Apollo Beach, Hillsborough County, FL, 33572.  The
Supplemental Declarations further indicate the property
classification, the premium basis, the rate and the amount of the
premium.

     The Court has examined the coverage provided, as well as the
extensive list of exclusions.  While the subject policy is not a
miracle of clarity, for the following reasons, the Court finds
that the subject policy is not ambiguous.  There are many
references within the subject policy to "Commercial General
Liability Coverage."  In addition, the policy includes bodily
injury and property damage liability, personal and advertising
injury liability, medical payments, and supplementary payments.

14

Case No. 8:09-CV-1081-T-17TGW

The presence of coverage for advertising injury liability is an
indicator of a commercial general liability insurance policy.  In
Section IV, the policy specifies "Commercial General Liability
Conditions."

     The Court relies on the plain and ordinary meaning of the
terms in the policy.  Upon considering the policy as a whole,
including the coverage provisions as well as the exclusions, the
Court concludes the subject policy is intended to be a
landlord/tenant policy, and not a commercial general liability
insurance policy.

     In Coverage A, Bodily Injury and Property Damage Liability,
the policy provides that "This insurance applies to "bodily
injury" and "property damage" only if:

          1.  The "bodily injury" or "property damage
          is caused by an "occurrence" that takes place
          in the "coverage territory";

          2.  The "bodily injury" or "property damage"
          occurs during the policy period;...

The policy defines "coverage territory" in broad terms i.e. in
the United States of America, Puerto Rico and Canada, travel in
international waters or airspace, and all other parts of the
world if the injury or damage arises out of goods or products
made or sold by the insured in the territory described, or arises
out of a person whose home is in the territory described but is
away for a short time on the insured's business, or "personal and
advertising injury" offenses that take place through the
Internet.  (Dkt. 1-1, p. 25).  The Court reads the provisions of
the Declarations and Supplemental Declarations page to modify the

15

Case No. 8:09-CV-1081-T-17TGW

general definition of "coverage territory," considering the size of premium paid by Defendant Halykoytakis and giving effect to the Lessors Risk endorsement.  The Declarations and Supplementary Declarations identify the premises owned by Defendant Halikoytakis, explicitly refer to the Policy as "LRO" (Lessors Risk Only), and relate the amount of the premium for the policy to the restricted risk to which Plaintiff Underwriters is exposed.

Other provisions clarify the restricted scope of the subject insurance policy.  The list of endorsements documents numerous exclusions from coverage.  The Court notes that the policy excludes coverage for:

> j.  **Damage to Property**
> "Property damage" to:
>
> 1.  Property you own, rent, occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including the prevention of injury to a person or damage to another's property;
>
> .....
>
> (5) That particular part of real property on which you or any contractor or subcontractors working directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations; or
>
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>
> ....

16

Case No. 8:09-CV-1081-T-17TGW

> Paragraphs (3)(4)(5) and (6) of this
> exclusion do not apply to liability assumed
> under a sidetrack agreement.

The above exclusions relate to a contractor's potentially
defective or faulty workmanship that may cause injury to others
or damage to another person's property.  Commercial general
liability policies are intended to cover such business risks, but
the subject policy excludes them.

In reviewing the policy provisions identifying "who is an
insured" under the policy, the Court notes that individuals
identified in the Declarations are covered "but only with respect
to the conduct of the business."  The provisions under Section II
limit coverage to conduct within the scope of employment or while
performing duties related to the conduct of the insured's
business.

The Court further notes that the "Other Insurance"
provisions provide that the subject policy is in excess over,
inter alia:

> (1) Any of the other insurance, whether
> primary, excess, contingent or on any other
> basis:
>
> (a) That is Fire, Extended Coverage,
> Builder's Risk, Installation Risk or similar
> coverage for "your work";
>
> ....
>
> (2) Any other primary insurance available to
> you covering liability for damages arising
> out of the premises or operations, or the
> products and completed operations, for which
> you have been added as an additional insured

17

Case No. 8:09-CV-1081-T-17TGW

       by attachment of an endorsement.

    Defendant Halykoytakis admits that he did not specifically ask to be included as an additional insured on the CGL policy of Point Builders, Inc, and did not obtain a Certificate of Insurance prior to the commencement of the work to confirm coverage.

    The Court notes that the Lessor's Risk Endorsement is worded in terms of the insured "must be added as an additional insured" but the Independent Contractor Special Condition is worded in terms of the insured "should be added as an additional insured." After considering all of the provisions of the subject policy as a whole, the Court finds that Defendant Halykoytakis' interpretation of the wording as permissive rather than mandatory is not reasonable.

    As to the "Designated Premises" endorsement, the Court relies on <u>Union American Insurance Company v. Haitian Refugee Center/Sant Refijie Ayisyin, Inc.</u>, 858 So.2d 1076, 1078 (Fla. 3d DCA 2003). The Court finds that the Designated Premises endorsement precludes coverage for the loss.

    After consideration, the Court grants Plaintiff's Motion for Summary Judgment. The Court will enter a separate judgment declaring that the subject policy is invalidated due to failure to comply with the Independent Contractors Special Condition, declaring that Underwriters does not have a duty to defend or indemnify Hali Plaza for damages arising from the June 11. 2008 incident and that are the subject of the Underlying Lawsuit; and that Underwriters has the right to withdraw from defending Hali

Case No. 8:09-CV-1081-T-17TGW

Plaza in the Underlying Lawsuit.  Any motion for the award of
attorney's fees and costs for this case and those incurred in the
defense of the Underlying Lawsuit shall be filed in accordance
with the Federal Rules of Civil Procedure and the Local Rules.

     **DONE AND ORDERED** in Chambers, in Tampa, Florida on this
31st day of March, 2011.


ELIZABETH A. KOVACHEVICH
United States District Judge


Copies to:
All parties and counsel of record

19